USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/18/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
:
JAMES D. LAX, :
:
                              Plaintiff, :      1:24-cv-4249-GHW
:
                              -v - :      MEMORANDUM OPINION &
:       ORDER
MONARCH LIFE INSURANCE COMPANY, :
:
                              Defendant. :
:
-------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

## I. INTRODUCTION

      Defendant Monarch Life Insurance Company ("Monarch") issued two disability insurance policies to Plaintiff James D. Lax. Under the terms of the policies, the duration of any disability payments depends on whether Mr. Lax's disability began before or after his 65th birthday. Mr. Lax alleges that he became disabled before he turned 65. In March 2019, after Mr. Lax turned 65, he applied for the policies' disability benefits and began receiving monthly payments from Monarch. Two years later, Monarch terminated the disability payments, claiming that because Mr. Lax became disabled after his 65th birthday, he was not entitled to lifetime benefits. Mr. Lax brought this action alleging that Monarch breached and repudiated the policies and that Monarch was unjustly enriched. Monarch moves to dismiss four of Mr. Lax's five causes of action as duplicative of his breach of contract claim or as otherwise inactionable.

      Because Mr. Lax's allegations of a breach of the insurance policies do not also state claims for breach of the covenant of good faith, for repudiation, or for unjust enrichment, Monarch's motion to dismiss the second, third, and fourth causes of action is granted. Because the unambiguous language of the residual disability provision states that Monarch need not pay residual benefits longer than two years after Mr. Lax's 63rd birthday regardless of when the disability

occurred, Monarch's motion to dismiss the fifth cause of action is granted. Additionally, the Court dismisses Mr. Lax's demand for attorneys' fees and punitive damages because neither are recoverable in insurance contract disputes under New York law.

## II. BACKGROUND

### A. Facts[1]

#### 1. The Parties

Plaintiff is a medical doctor who lives in the State of New York. Dkt. No. 1-1, Verified Complaint (the "Complaint") ¶ 3. Defendant is an insurance company organized under the laws of the State of Massachusetts with a primary place of business in Massachusetts. *Id.* ¶ 4.

#### 2. The 1987 Policy

On December 1, 1987, Defendant issued a disability insurance policy (the "1987 Policy") to Plaintiff. *Id.* ¶ 9. Under the terms of the 1987 Policy, Plaintiff was required to pay annual premiums to Defendant, and in the event that Plaintiff became disabled, Defendant was required to provide monthly benefits to Plaintiff. Dkt. No. 15-1, 1987 Policy, at 4; Compl. ¶ 10. The monthly benefit that Defendant was required to pay in the event that Plaintiff suffered a "total disability" was "$3,000 per month to the end of the Maximum Benefit Period."[2] 1987 Policy at 4. The "Maximum

---

[1] At the motion to dismiss stage, the Court accepts the following facts set forth the Verified Complaint ("Complaint"), Dkt. No. 1-1. Additionally, the Court will consider the insurance policies at issue as they are "incorporated by reference" in the Complaint or otherwise integral to the Complaint. *DiFolco v. MSNBC Cable L.L.C.,* 622 F.3d 104, 111 (2d Cir. 2010) (explaining that in considering a motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint"); *see also Lynch v. City of New York*, 952 F.3d 67, 79 (2d Cir. 2020) ("[E]ven if the plaintiff chooses not to attach an instrument to the complaint or to incorporate it by reference, if it is one upon which the plaintiff solely relies and which is integral to the complaint, the court may take the document into consideration in deciding the defendant's motion to dismiss." (internal quotation marks and brackets omitted)). A document is "integral to the complaint" if the complaint "relies heavily" on the document's "terms and effect." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016).

[2] "Total disability" was defined in the 1987 Policy as being "unable to do the substantial and material duties of [the insured's] regular occupation" as a result of "sickness or injury." 1987 Policy, at 6. At certain points during the life of the 1987 Policy, Plaintiff was permitted to request increases in the monthly benefit for total disability. *Id.* at 13–14, 17.

Benefit Period" under the policy was "[the insured's] lifetime if disability starts before [their] 65th birthday, otherwise 24 months." *Id.*

In the event of a "residual disability," the 1987 Policy required that Defendant pay Plaintiff "a portion of the monthly benefit for total disability"; "[t]he portion is [Plaintiff's] loss of earnings divided by [his] pre-disability earnings."[3] *Id.* at 7. The residual benefit provision of the 1987 Policy reads in relevant part as follows:

> We will pay the [residual disability] benefit as long as your residual disability continues. But we will not pay residual benefits if the combined period for which total and residual disability benefits are paid exceeds: the Maximum Benefit Period; or 24 months after your 63rd birthday. Also we will not pay residual benefits if disability starts after your 65th birthday.

*Id.* at 7.

### 3. The 1990 Policy

On March 29, 1990, Defendant issued Plaintiff an additional insurance policy (the "1990 Policy") obligating Defendant to pay further benefits in the event Plaintiff became disabled. Compl. ¶¶ 14, 15. Pursuant to the 1990 Policy, Plaintiff was entitled to receive "total disability" benefits of "$1,500 per month to the end of the Maximum Benefit Period," which, as in the 1987 Policy, was defined as "[the insured's] lifetime if disability starts before [their] 65th birthday, otherwise 24 months."[4] Dkt. No. 15-2, 1990 Policy, at 6. The 1990 Policy contained a residual disability provision identical to the one in the 1987 Policy; it provided that Plaintiff receive a portion of the total disability benefit in the event he suffered a residual disability. *Id.* at 10–11. As in the 1987 Policy, the 1990 Policy's residual benefit provision stated that Defendant "will not pay residual

---

[3] "Residual disability" was defined in the 1987 Policy as being "able to do some but not all of the substantial and material duties of [the insured's] regular occupation" or being "able to do all of the substantial and material duties . . . but for less than full time" as a result of "sickness or injury." 1987 Policy at 6.
[4] At certain points during the life of the 1990 Policy, Plaintiff was permitted to request increases in the monthly benefit for total disability. *Id.* at 16, 18–19.

benefits if the combined period for which total and residual disability benefits are paid exceed: the Maximum Benefit Period; or 24 months after [the insured's] 63rd birthday." *Id.* at 11.

### 4. Plaintiff's Disability

In 1996, Plaintiff was diagnosed with anxiety. Compl. ¶ 20. In 1999, Plaintiff began to suffer from hearing loss. *Id.* ¶ 21. Plaintiff's hearing "continued to deteriorate," which "made it more difficult for him to work as a doctor." *Id.* ¶ 22. In 2003, Plaintiff developed "aortic regurgitation," a "progressive" and "serious heart condition" that "continued to deteriorate with [Plaintiff's] age." *Id.* ¶ 23. In January 2018, when Plaintiff was 64 years old, he was given notice by his employer that he would be terminated the following January. *Id.* ¶¶ 27–28. In September 2018, Plaintiff's treating physician certified that he was no longer able to perform his tasks as a clinical physician due to his anxiety, mood, sleep quality, fatigue, poor concentration, ongoing hearing loss, and deteriorating cardiac condition. *Id.* ¶¶ 29–30.

### 5. Plaintiff's Benefits

"[Plaintiff] paid premiums of over $100,000 to [Defendant] over the lifetime of the 1987 and 1990 Policies." *Id.* ¶ 38. On March 29, 2019, Plaintiff submitted an application for disability benefits under his Policies. *Id.* ¶ 31. Plaintiff submitted the requested medical records, and in June 2019, Defendant approved Plaintiff for monthly benefits in the amount of $4,420 under the 1987 Policy and $2,020 in benefits under the 1990 Policy. *Id.* ¶ 32.

Two years later, in a letter dated June 2, 2021, Defendant informed Plaintiff that it was unilaterally terminating Plaintiff's disability payments. *Id.* ¶ 33. Defendant claimed that Plaintiff's disability arose after he turned 65, which under the 1987 and 1990 Policies would only entitle Plaintiff to two years of disability payments. *Id.* ¶ 37. Plaintiff provided Defendant further information to demonstrate that his "disability arose no later than 2018, when [Plaintiff] was 64 years old," but Defendant has not resumed payments. *Id.* ¶ 36.

### B. Procedural History

Plaintiff initiated this action on June 4, 2024 alleging that Defendant "unlawfully terminated Plaintiff's disability benefits . . . and thereafter refused in bad faith to examine records and documents that demonstrated that Plaintiff was entitled to lifetime disability benefits under the disability insurance contracts." Compl. ¶ 1.  Plaintiff asserts five claims against Defendant:  (1) Defendant breached the 1987 and 1990 Policies by terminating Plaintiff's disability benefits even though his disability began before his 65th birthday; (2) Defendant, in bad faith, breached the covenant of good faith and fair dealing by refusing to assess the evidence Plaintiff provided regarding the start of his disability; (3) Defendant's refusal to continue disability payments constituted an anticipatory breach and repudiation of the Policies; (4) Defendant was unjustly enriched after Plaintiff paid Defendant over $100,000 in premiums but was denied benefits; and (5) Defendant breached the 1987 and 1990 Policies by terminating Plaintiff's residual disability benefits even though his disability began before his 65th birthday.  *Id.*  ¶¶ 43, 47, 50, 54, 58.

On July 17, 2024, Defendant filed a motion to dismiss the second, third, fourth, and fifth causes of action, Dkt. No. 13, as well as a Memorandum of Law in Support of Defendant's Motion, Dkt. No. 16 ("Def. Mot.").  Plaintiff filed a Memorandum of Law in Partial Opposition to Defendant's Partial Motion to Dismiss on August 7, 2024.  Dkt. No. 21 ("Pl. Opp.").  Defendant filed a reply on August 14, 2024.  Dkt. No. 22 ("Def. Reply").

## III. LEGAL STANDARDS

### A. Rule 12(b)(6)

A complaint need only contain "a short and plain statement . . . showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A defendant may move to dismiss a claim that does not meet this pleading standard for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  On a motion filed under Rule 12(b)(6), the court accepts as true the facts alleged in

the complaint and draws all reasonable inferences in the plaintiff's favor. *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are inadequate. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). And "[t]he tenet that a court must accept as true" a complaint's factual allegations does not apply "to legal conclusions." *Iqbal*, 556 U.S. at 678 (alterations omitted).

To survive dismissal, a complaint must allege sufficient facts to state a plausible claim. *Twombly*, 550 U.S. at 570. A claim is plausible when the plaintiff pleads facts to support the reasonable inference that the defendant has acted unlawfully. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The plaintiff's claim must be more than merely "speculative." *Twombly*, 550 U.S. at 545. And a reviewing court must "draw on its judicial experience and common sense" to determine plausibility. *Iqbal*, 556 U.S. at 679 (citation omitted).

On a motion to dismiss, a court must generally "limit itself to the facts stated in the complaint." *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 192 (2d Cir. 2006) (quoting *Hayden v. County of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999)). "Generally, [courts] do not look beyond 'facts stated on the face of the complaint, . . . documents appended to the complaint or incorporated in the complaint by reference, and . . . matters of which judicial notice may be taken.'" *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (quoting *Concord Assocs., L.P. v. Entm't Props. Tr.*, 817 F.3d 46, 51 n.2 (2d Cir. 2016)). A court may consider "any 'written instrument' . . . attached to [the complaint] as 'an exhibit' or . . . incorporated in it by reference." *Lynch v. City of New York*, 952 F.3d 67, 79 (2d Cir. 2020) (quoting Fed. R. Civ. P. 10(c) (other citations omitted)). A court may also consider a document "solely relie[d]" on by the plaintiff if it "is integral to the complaint." *Id.* (quotation and brackets omitted). A document is "integral to the complaint" if the complaint "relies

6

heavily" on the document's "terms and effect."  *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016).

    **IV.**    **DISCUSSION**

        **A. Bad Faith Breach of the Covenant of Good Faith Is Not a Cause of Action Available to Plaintiff Because Plaintiff's Claims Arise Under an Insurance Contract**

Plaintiff's second cause of action—that Defendant has breached the covenant of good faith and fair dealing in denying Plaintiff's benefits—is not actionable because it arises under an insurance contract.  *See Acquista v. New York Life Ins. Co.*, 730 N.Y.S.2d 272, 278 (N.Y. App. Div. 2001) ("We are unwilling to adopt the widely-accepted tort cause of action for 'bad faith' in the context of a first-party claim . . . .  Essentially, . . . the duties and obligations of the parties to an insurance policy are contractual rather than fiduciary." (internal quotation marks omitted)).  Plaintiff reasonably concedes that there is no cause of action for breach of the covenant of good faith in an insurance contract.  Pl. Opp. at 6–7 ("We agree that there is no stand-alone bad-faith claim under New York law for denial of coverage on a first-party contract of insurance . . . .").  Therefore, Plaintiff's second cause of action is dismissed.

While Plaintiff argues that a showing of bad faith—or a breach of the covenant of good faith—can support recovery of consequential damages when a party breaches an insurance contract, *see* Pl. Opp. at 7–9, the Court need not reach that issue of damages in order to resolve this motion.  This motion requires resolution only of the question of whether breach of the covenant of good faith can stand as an independent cause of action in this case.  It cannot.

        **B. Plaintiff Has Not Adequately Pleaded That Defendant Repudiated the Policies**

Plaintiff has failed to state a claim that Defendant "repudiated and anticipatorily breached its obligation[s]" under the Policies because Plaintiff has only alleged that Defendant denied his claims, not that Defendant disclaimed the entire policy.  Compl. ¶ 50.  Under New York law, a plaintiff can

7

recover for an anticipatory breach under a disability insurance policy only "where the insurer has repudiated the entire policy." *Squillante v. Cigna Corp.*, No. 1:12-CV-6003-SAS, 2012 WL 5974074, at *3 (S.D.N.Y. Nov. 28, 2012) (quoting *Wurm v. Commercial Ins. Co. Of Newark, New Jersey,* 766 N.Y.S.2d 8, 12 (N.Y. App. Div. 2003) ("Generally, an insured who sues its insurer for failure to pay benefits under a policy may only recover benefits that have already accrued. . . . However, there is a narrow exception to this rule.")). "Repudiating an insurance policy is not the same as denying that the claim presented is covered by the terms of that policy." *Jacobson v. Metro. Prop. & Cas. Ins. Co.*, 672 F.3d 171, 177 (2d Cir. 2012). If the insurer "investigated the claim[] and rested its rejection of [the] claim squarely on its interpretation of provisions of the policy," the insurer has not repudiated those provisions but rather "appealed to their authority and endeavored to apply them." *Id.* at 178 (quoting *N.Y. Life Ins. Co. v. Viglas*, 297 U.S. 672, 676 (1936)).

  Here, Defendant grounded its decision to terminate Plaintiff's benefits on the terms of the Policies and thus has not repudiated the Policies. The Policies only allow for a benefit period of two years for total disability arising after the insured's 65th birthday. 1987 Policy at 4; 1990 Policy at 6. And Defendant took the position that Plaintiff's disability arose after his 65th birthday. Compl. ¶ 37. Therefore, Defendant is alleged to have acted in accordance with its understanding of the Policies' maximum benefit period provisions when it terminated Plaintiff's payments after two years. *Id.* ¶¶ 33, 37. Defendant's termination is thus based on an "appeal[] to the[] authority" of the terms of the Policies rather than a repudiation of those terms. *Jacobson*, 672 F.3d at 178 (quoting *Viglas*, 297 U.S. at 676); *see also Wurm*, 766 N.Y.S.2d at 12 ("Repudiation occurs when the insurer completely abrogates any obligation ever to make monthly disability payments . . . no matter what the proof of disability is given the insurer." (internal quotation marks omitted)). There is no allegation that Defendant has disclaimed the binding effect of the Policies or "given [any] indication that it considers the polic[ies] null and void"; therefore, Plaintiff has not adequately pleaded that

Defendant has repudiated the Policies. *Scherer v. Equitable Life Assurance Soc'y of U.S.*, 190 F. Supp. 2d 629, 634 (S.D.N.Y. 2002), *vacated and remanded on other grounds*, 347 F.3d 394 (2d Cir. 2003) ("Although plaintiff broadly alleges that defendant has repudiated the [p]olicy, the specific factual allegations in the amended complaint reveal plaintiff's claim to be a simple dispute over plaintiff's entitlement to benefits.").

Contrary to Plaintiff's argument, the timing of an insurer's decision to terminate benefits has no bearing on the analysis of whether that decision constitutes a repudiation of the insurance policy. Plaintiff contends that Defendant's denial of his claim amounts to repudiation because at the time Defendant terminated the payments, there were no remaining obligations for either party under the contract. Pl. Opp. at 11–12. The Court disagrees. *Jacobson* articulates the distinction between repudiation and denial of a claim, and this distinction contains no temporal element. *Jacobson*, 672 F.3d at 177. Plaintiff has offered no authority in support of his position that the denial of the last claim on an expiring insurance policy should be treated differently than the denial of a claim prior to the expiration of that policy. Accordingly, Plaintiff has not adequately pleaded that Defendant repudiated the Policies when it terminated Plaintiff's benefits.

### C. Plaintiff's Unjust Enrichment Claim is Duplicative of His Breach of Contract Claim

Plaintiff's claim for unjust enrichment is duplicative of Plaintiff's breach of contract claim because the substance of both claims is the same, and Plaintiff "asserts no additional or different allegation to support his unjust enrichment claim." *Dumontet v. UBS Fin. Servs., Inc.*, No. 1:21-CV-10361-GHW, 2024 WL 1348752, at *9 (S.D.N.Y. Mar. 29, 2024). Under New York law, "[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." *Beth Israel Med Ctr. v. Horizon Blue Cross & Blue Shield of N.J.*, 448 F.3d 573, 587 (2d Cir. 2006) (quoting *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 521 (1987)). However, "even though

9

[p]laintiffs may not ultimately *recover* under both the breach of contract and unjust enrichment claims, courts in this Circuit routinely allow plaintiffs to *plead* such claims in the alternative." *Transcience Corp. v. Big Time Toys, LLC,* 50 F. Supp. 3d 441, 452 (S.D.N.Y. 2014) (emphasis in original); *see also Newman & Schwartz v. Asplundh Tree Expert Co.,* 102 F.3d 660, 663 (2d Cir. 1996) (finding that a claim for unjust enrichment was "properly pleaded as such in the alternative to the [breach of contract claim]"); *Johnson v. Carlo Lizza & Sons Paving, Inc.,* 160 F. Supp. 3d 605, 617 (S.D.N.Y. 2016) (reasoning that although "plaintiffs have adequately pled, for the purpose of surviving a motion to dismiss, that there was a valid and enforceable contract, this pleading does not estop them from pleading a quasi-contract claim in the alternative").

However, "unjust enrichment is not a catchall cause of action to be used when others fail." *Corsello v. Verizon N.Y., Inc.,* 18 N.Y.3d 777, 790 (2012). The claim "is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Id.* As a result,

> [a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim. And an unjust enrichment claim will not survive a motion to dismiss where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action.

*Campbell v. Whole Foods Mkt. Group, Inc.,* 516 F. Supp. 3d 370, 394 (S.D.N.Y. 2021) (internal quotation marks and citations omitted).

Here, Plaintiff "asserts no additional or different allegation to support his unjust enrichment claim." *Dumontet*, 2024 WL 1348752, at *9. *See* Compl. ¶¶ 53–55 ("Lax repeats, reiterates and re-alleges each and every allegation set forth above as if fully set forth herein. Monarch has been unjustly enriched and in equity and good conscience should not be permitted to retain the benefits it unjustly received from Lax."). Instead, Plaintiff premises his unjust enrichment claim on Defendant's termination of Plaintiff's disability benefits in purported breach of the Policies, which is

10

identical to Plaintiff's breach of contract claims. *See* Compl. ¶¶ 42–52, 56–60. The alleged injustice is simply that Plaintiff did not receive what was promised in the Policies after Plaintiff performed his obligations by paying the premiums. Compl. ¶ 38–40. Because the parties do not dispute that the Policies are valid and enforceable, there is no ground on which Plaintiff could win on his unjust enrichment claim if his breach of contract claims fail. *Corsello,* 18 N.Y.3d at 791 ("To the extent that these claims succeed, the unjust enrichment claim is duplicative; if plaintiffs' other claims are defective, an unjust enrichment claim cannot remedy the defects."). Accordingly, Plaintiff's unjust enrichment claim is "a mere repackaging" of his other claims. *Campbell,* 516 F. Supp. 3d at 394; *see, e.g., Smith v. Apple, Inc.,* 583 F. Supp. 3d 554, 569 (S.D.N.Y. 2022) ("The plaintiffs do not explain why their unjust enrichment claim is distinct from their other claims . . . . Accordingly, the plaintiffs' unjust enrichment claim must be dismissed."); *Cooper v. Mt. Sinai Health Sys., Inc.,* No. 1:23-CV-945-PAE, 2024 WL 3586357, at *12–13 (S.D.N.Y. 2024) ("The conduct underlying the [complaint's] unjust enrichment claim is the same underlying its implied contract claim . . . . The Court accordingly dismisses this claim as duplicative."). Plaintiff's unjust enrichment claim is thus duplicative of his breach of contract claims.

### D. Plaintiff Has Not Adequately Pleaded That Defendant Breached the Residual Disability Provision

Plaintiff's claim for breach of the Policies' residual disability provisions fails to state a claim because the Policies unambiguously provide that Defendant may cease residual disability payments if the period for which benefits are paid exceeds twenty-four months after Plaintiff's 63rd birthday. Under New York law, to state a claim for breach of contract, "the complaint must allege: (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." *Orlander v. Staples, Inc.,* 802 F.3d 289, 294 (2d Cir. 2015) (quoting *Johnson v. Nextel Commc'ns, Inc.,* 660 F.3d 131, 142 (2d Cir. 2011)). "When interpreting a contract, our 'primary objective is to give effect to the intent of the parties as revealed by the

11

language of their agreement.'" *Chesapeake Energy Corp. v. Bank of N.Y. Mellon Tr. Co.,* 773 F.3d 110, 113–14 (2d Cir. 2014) (ellipsis omitted) (quoting *Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 232 F.3d 153, 157 (2d Cir. 2000)). "The words and phrases in a contract should be given their plain meaning, and the contract should be construed so as to give full meaning and effect to all of its provisions." *Id.* at 114 (brackets omitted) (quoting *Olin Corp. v. Am. Home Assur. Co.*, 704 F.3d 89, 99 (2d Cir. 2012)).

On a motion to dismiss, "a district court may dismiss a breach of contract claim only if the terms of the contract are unambiguous." *Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.,* 830 F.3d 152, 156 (2d Cir. 2016). Thus, as a "threshold question," courts must consider if "the terms of the contract are ambiguous." *Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's,* 136 F.3d 82, 86 (2d Cir. 1998). "Whether or not a writing is ambiguous is a question of law to be resolved by the courts." *Orlander v. Staples,* 802 F.3d 289, 294 (2d Cir. 2015) (quoting *W.W.W. Assocs., Inc. v. Giancontieri,* 77 N.Y.2d 157, 162 (1990)). "Ambiguity is determined by looking within the four corners of the document, not to outside sources." *CVS Pharmacy, Inc. v. Press Am., Inc.,* 377 F. Supp. 3d 359, 374 (S.D.N.Y. 2019) (quoting *JA Apparel Corp. v. Abboud,* 568 F.3d 390, 396 (2d Cir. 2009)); *see also Brad H. v. City of New York,* 17 N.Y.3d 180, 186 (2011) ("Ambiguity is determined within the four corners of the document; it cannot be created by extrinsic evidence that the parties intended a meaning different than that expressed in the agreement . . . ."). A contract is unambiguous when it has "a definite and precise meaning, unattended by danger of misconception . . . and concerning which there is no reasonable basis for a difference of opinion." *Olin Corp. v. Am. Home Assur. Co.,* 704 F.3d 89, 99 (2d Cir. 2012) (citation omitted). Conversely,

> [a] contract is ambiguous under New York law if its terms could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.

*Orchard Hill,* 830 F.3d at 156–57 (internal quotation marks omitted) (quoting *Chesapeake Energy Corp. v. Bank of N.Y. Mellon Tr. Co.,* 773 F.3d 110, 114 (2d Cir. 2014)).  "The language of a contract . . . is not made ambiguous simply because the parties urge different interpretations."  *Oppenheimer & Co. v. Trans Energy, Inc.,* 946 F. Supp. 2d 343, 348 (S.D.N.Y. 2013) (internal quotation marks omitted).

Courts analyze ambiguity using the "normal rules of contract interpretation:  words and phrases should be given their plain meaning and a contract should be construed as to give full meaning and effect to all of its provisions."  *Orchard Hill,* 830 F.3d at 157 (internal quotation marks omitted) (quoting *Orlander,* 802 F.3d at 295).  New York law requires that "an ambiguous provision in an insurance policy [be] construed 'most favorably to the insured and most strictly against the insurer.'"  *Vargas v. Ins. Co. of N. Am.,* 651 F.2d 838, 840–41 (2d Cir. 1981) (citing *Index Fund, Inc. v. Ins. Co. of N. Am.,* 580 F.2d 1150, 1162 (2d Cir. 1978); *see also Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.,* 600 F.3d 190, 201 (2d Cir. 2010) ("Under New York law, . . . we resolve ambiguities in favor of the insured."); *Roc Nation LLC v. HCC Int'l Ins. Co., PLC,* 523 F. Supp. 3d 539, 563 (S.D.N.Y. 2021) ("[W]here policy language is ambiguous, the ambiguities must be construed in favor of the insured and against the insurer.").

Plaintiff fails to plead that Defendant breached the unambiguous terms of the Policies' residual disability provisions when Defendants refused payment of residual disability benefits in June 2021.  The residual disability benefit provisions clearly provide that Defendant "will not pay residual benefits if the combined period for which total and residual disability benefits are paid exceeds:  the maximum benefit period; *or* 24 months after [the insured's] 63rd birthday."  1987 Policy at 7 (emphasis added); *see also* 1990 Policy at 11.  Pursuant to these terms, Defendant may stop paying residual disability benefits if the payment duration has exceeded either of these periods of time.  *Del Glob. Techs. Corp. v. Park*, No. 1:03-CV-8867-PGG, 2008 WL 5329963, at *4 (S.D.N.Y. Dec. 15, 2008) (noting that "the disjunctive 'or' . . . indicat[es] an alternative event"); *Portside Growth and*

13

*Opportunity Fund v. Gigabeam Corp., Inc.*, 557 F. Supp. 2d 427, 431 (S.D.N.Y. 2008) ("[T]he context of the contested language must override the ordinary presumption that the term 'or' expresses an alternative.") (citing Black's Law Dictionary 1990 (6th ed. 1990) (noting that "or" is "[a] 'disjunctive' particle used to express an alternative or to give a choice of one among two or more things")). Thus, the Policies' plain language permits Defendant to refuse to pay Plaintiff residual disability benefits if the combined period for which total and residual disability benefits are paid exceeds twenty-four months after Plaintiff's 63rd birthday.

Plaintiff alleges that Defendant paid Plaintiff total disability benefits from June 2019 to June 2021, a period of twenty-four months. Compl. ¶¶ 32–33. The Complaint asserts that Plaintiff was 64 years old in 2018. Compl. ¶¶ 36. Thus, the combined period for which total and residual disability benefits were paid by Defendant to Plaintiff exceeded twenty-four months after Plaintiff's 63rd birthday. The plain language of the residual benefits provision states that Defendant will not pay Plaintiff residual disability benefits under these circumstances. Plaintiff has therefore failed to state a claim for breach of the Policies' residual disability benefits provisions.

### E. Plaintiff Is Not Entitled to Attorneys' Fees and Punitive Damages with Respect to His Second and Fifth Causes of Action

Plaintiff is unable to recover attorneys' fees and punitive damages in connection with his second and fifth causes of action—bad faith breach of the covenant of good faith and breach of contract, respectively.

#### 1. Plaintiff Is Not Entitled to Attorneys' Fees

Plaintiff may not recover attorneys' fees from this action. Under New York law, "[i]t is well established that an insured may not recover the expenses incurred in bringing an affirmative action against an insurer to settle the rights under the policy." *New York Univ. v. Cont'l Ins. Co.*, 662 N.E.2d 763, 772 (N.Y. 1995). Because Plaintiff brings this suit against Defendant, an insurer, to recover under insurance contracts, attorneys' fees and expenses are not recoverable. Plaintiff concedes this

14

point. *See* Pl. Opp. at 14 ("[L]ax agrees that the law does not at this point permit an award of punitive damages or attorney's fees incurred by Lax in prosecuting this action . . . .").

### 2. Plaintiff Is Not Entitled to Punitive Damages

Further, Plaintiff may not recover punitive damages in connection with his claims of breach of contract and breach of the covenant of good faith. In order to recover punitive damages arising from a breach of contract, "(1) [the] defendant's conduct must be actionable as an independent tort; (2) the tortious conduct must be of [an] egregious nature . . . ; (3) the egregious conduct must be directed to [the] plaintiff; and (4) it must be part of a pattern directed at the public generally." *New York Univ.*, 662 N.E.2d at 767 (citations omitted). The independent tort must be "distinct from [the defendant's] contractual obligations." *Id.* Plaintiff has not alleged any such independent tort, egregious conduct, or any pattern of that conduct directed at the public. Rather, Plaintiff concedes that under New York law, he does not have a cognizable claim for punitive damages. *See* Pl. Opp. at 14 ("[L]ax agrees that the law does not at this point permit an award of punitive damages or attorney's fees incurred by Lax in prosecuting this action . . . .").

Because attorneys' fees and punitive damages are not available in connection with Plaintiff's claims, the Court strikes Plaintiff's request for attorneys' fees and punitive damages.

### V. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss Plaintiff's second, third, fourth, and fifth causes of action and to srike Plaintiff's request for attorneys' fees and punitive damages is GRANTED.

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 13.

SO ORDERED.

Dated: October 18, 2024
      New York, New York

_____
GREGORY H. WOODS
United States District Judge

15